**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>EDWARD MAGRUDER,<br>    Defendant/Petitioner. | **Criminal No. 19-203 (CKK)**<br>**Civil Action No. 25-4175 (CKK)** |

**MEMORANDUM OPINION**
(July 28, 2026)

Pending before the Court is Defendant/Petitioner Edward Magruder's [84] *pro se* Motion

Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody.[1] Defendant/Petitioner Edward Magruder (hereinafter "Defendant") argues that his

sentence and conviction should be vacated because his sentence was imposed in violation of his

Sixth Amendment right to effective counsel and his Fifth Amendment right to due process.  More

specifically,

> [Defendant] asserts ineffective assistance of plea counsel based upon counsel's purported
> failure to investigate and obtain material, exculpatory evidence and misrepresentation
> during the October 25, 2019 plea hearing that counsel had received all of the discovery in
> this case.  Defendant further argues that the government withheld exculpatory evidence, in
> violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which rendered his guilty plea
> involuntary and unintelligent.

---

[1] In connection with this Memorandum Opinion, the Court considered: (1) Defendant Edward
Magruder's [84] P*ro se* Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody ("Def.'s Mot."), including the [84-1] supplement
thereto (Def.'s Supp."); (2) the Government's [86] Opposition to Defendant's *Pro se* Motion
Under 28 U.S.C. §2255 ("Gov't Opp'n"); and (3) the entire record in this case.  While Defendant
was permitted until March 2, 2026 to file a reply, no reply has been docketed or otherwise
received by the Court.

Govt. Opp'n, ECF No. 86, at 1 (summarizing Defendant's claims).   Regarding Defendant's ineffective assistance claim, the Government contends that it "is procedurally barred because he already unsuccessfully brought [an ineffective assistance of counsel] claim on direct appeal" and furthermore, it is without merit because Defendant has not satisfied the requisite standard under *Strickland v. Washington*, 366 U.S. 668 (1984).   Gov't Opp'n, ECF No. 86, at 1.   Regarding Defendant's *Brady* claim, the Government asserts that Defendant waived this claim under his Plea Agreement, or alternatively, that it is procedurally barred and without merit.   For the reasons explained herein, this Court finds that Defendant is entitled to no relief and accordingly, his [84] Section 2255 Motion shall be DENIED.

Furthermore, the Court declines to hold a hearing on Defendant's Motion. "A judge need not conduct an evidentiary hearing before denying a petition for relief under §2255 when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Morrison*, 98 F. 3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255). The decision to conduct a hearing is "committed to the court's discretion." *United States v. Pollard*, 959 F.2d 1011, 1031 (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)), *cert. denied*, 506 U.S. 915 (1992).   In making such a decision, "the judge's recollection of the events at issue may enable [the judge] summarily to dismiss a § 2255 motion." *Pollard*, 959 F.2d at 1031 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, n.4 (1977).)   It is "only where the § 2255 motion raises detailed and specific factual allegations whose resolution requires information outside of the record or the judge's personal recollection [that] a hearing [must] be held." *Pollard*, 959 F.2d at 1031 (internal quotation marks and citation omitted).   Having handled this case since its inception, the undersigned is familiar with the issues presented in Defendant's Motion.   Moreover, this Court

notes that Defendant's allegations in support of his Motion are not detailed and specific but instead are vague and conclusory. Accordingly, no hearing is necessary in connection with this Court's determination that Defendant is entitled to no relief.

The Court begins its analysis of Defendant's Motion by reviewing the background information relevant to the Motion.

I. BACKGROUND

A. Relevant Procedural History

On June 12, 2019, Defendant was indicted on one count of Unlawful Possession with Intent to Distribute One Kilogram or More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i). Indictment, ECF No. 5. On October 25 2019, Defendant pled guilty to the Indictment, pursuant to a Rule 11(c)(1)(C) plea agreement, and the parties agreed to a recommended sentencing range of 12-15 years of incarceration. Plea Agreement, ECF No. 13.

On May 29, 2020, Defendant filed his [27] Motion to Withdraw Guilty Plea, which was supplemented by Defendant subsequently, with both the motion and supplement thereafter being fully briefed by the parties. On July 10, 2020, this Court denied Defendant's [27] Motion to Withdraw Guilty Plea. Order, ECF No. 33; Mem. Op., ECF No 34. On January 5, 2021, Defendant filed a Second Motion to Withdraw Guilty Plea, which was denied by this Court on February 12, 2021. Order, ECF No. 49; Mem. Op., ECF No. 50.

Defendant's sentencing was set for February 23, 2021, but at the sentencing hearing, he requested further briefing on his Second Motion to Withdraw the Guilty Plea, which had been denied. The Court vacated the hearing and set a briefing schedule. Subsequently, Defendant filed two supplements to his Second Motion to Withdraw Guilty Plea, and the Government responded

3

thereto.  Upon noting that Defendant raised arguments in his April 2, 2021 Reply that had not previously been raised, the Court ordered Defendant to file a final supplement raising all claims in support of his Second Motion.  On June 22, 2021, Defendant filed his [59] Final Supplement, but after briefing on that Final Supplement was complete, Defendant filed yet another Supplement and a Supplemental Reply.  ECF Nos. 62, 63.  On December 6, 2021, this Court denied (again) Defendant's Second Motion to Withdraw Guilty Plea (as supplemented).  Order, ECF No. 64; Mem. Op., ECF No. 65.  On March 4, 2022, Defendant filed his [67] Third Motion to Withdraw Guilty Plea, which was denied by this Court on March 15, 2022.  Mem. Op and Order, ECF No. 69.

On April 22, 2022, Defendant was sentenced to 180 months incarceration – consistent with the Plea Agreement – and on May 4, 2022, he noted a timely appeal.  ECF No. 74.  More specifically, Defendant appealed from this Court's denial of his motions to withdraw his guilty plea, and on January 21, 2025, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") affirmed this Court's denial.  *See United States v. Magruder*, 124 F.4th 671 (D.C. Cir. 2025) (addressing arguments that: (1) this Court applied an erroneous legal standard by requiring Defendant to assert his innocence as a prerequisite to granting the withdrawal and (2) that his plea was tainted by ineffective assistance of counsel).[2]

B. Defendant's Section 2255 Motion

On December 1, 2025, Defendant filed this instant Section 2255 Motion, which raises two claims: (1) that plea counsel was ineffective; and (2) that there was a *Brady* violation.  While the

---

[2] The D.C. Circuit noted that Defendant "filed sixteen pleadings seeking to withdraw his guilty plea, all of which were denied  by the district court."  *Id.* at 676.

Government acknowledges that Defendant's Motion is timely, Govt. Opp'n, ECF No. 86, at 9-10, the Government contests Defendant's claims on grounds that Defendant is procedurally barred from raising his claims, they are without merit, and in part, on waiver. The Court turns now to the applicable legal standards.

II. LEGAL STANDARDS

A. Standard for Habeas Claims

Under 28 U.S.C. §2255, a federal prisoner may file a motion to vacate, set aside or correct his sentence upon belief that the otherwise final sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). A motion under Section 2255 is "an extraordinary remedy and not a substitute for a direct appeal." *Womack v. United States*, 395 F.2d 630, 631 (D.C. Cir. 1968); *see also Pollard*, 959 F.2d at 1020. "[T]o obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also Pollard*, 959 F.2d at 1020 (requiring the defendant to show "a good deal more than would be sufficient on direct appeal" to gain collateral relief). The petitioner has the burden of proof to demonstrate his right to such relief by a preponderance of the evidence. *United States v. Cooper*, 610 F. Supp. 3d 184, 189 (D.D.C. 2022) (citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973)).

B. Procedural Bars

Section 2255 petitioners are, however, procedurally barred from collaterally raising certain claims. *Frady*, 456 U.S. at 167. For example, claims raised and rejected on direct appeal generally

will not be entertained in a Section 2255 motion.  *Reed v. Farley*, 512 U.S. 339, 358 (1994) (concurrence in part); *United States v. Jackson*, No. 98-3010, 1998 WL 389111, at *1 (D.C. Cir. June 26, 1998).  In the absence of compelling newly discovered evidence or an intervening change in the law, a defendant cannot raise on collateral attack claims that were denied on direct appeal. *See United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir. 1987), *cert. denied*, 479 U.S. 993 (1986).  "Any other rule would frustrate policies strongly favoring conservation of judicial resources and finality of judicial decisions."  *Id.* (quoting *Garris v. Landsay*, 794 F.2d 722, 726 (D.C. Cir. 1986)).  To overcome this bar, a defendant must demonstrate either: (1) "cause" for his failure to raise the claim earlier and "prejudice" because of his failure, or (2) "actual innocence" of the crime of which he was convicted.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).

To demonstrate "cause," a defendant must prove that some "objective factor external to the defense" such as government interference with the factual or legal basis for the claim not being reasonably available "impeded counsel's efforts to raise the claim."  *McCleskey v. Zant*, 499 U.S. 467, 493-494 (1991).  To demonstrate "actual prejudice," a petitioner must show that errors at trial "worked to his *actual* and substantial disadvantage" resulting in an "error of constitutional dimensions."  *Frady*, 456 U.S. at 170 (emphasis in original).  At the very least, a petitioner must demonstrate that "there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different."  *United States v. Moore*, 75 F. Supp. 3d 568, 572 (D.D.C. 2014) (citing *Strickland*, 466 U.S. at 694, and *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)).

C. Ineffective Assistance of Counsel

"Where a petitioner raises claims of ineffective assistance of counsel in a §2255 motion,

he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a §2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citation omitted), *aff'd*, 22 Fed. App'x 3 (D.C. Cir. 2001).  The Defendant must show: (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice."  *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted).  For the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential" and defendant must "overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotation marks and citation omitted).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.  The Court must consider "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.

Furthermore, the defendant must meet the second *Strickland* prong and "affirmatively prove prejudice." *Id.* at 693.  That is, "the defendant [must] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with [a] reasonable probability [defined as] a probability sufficient to undermine confidence in the outcome." *Id.* at 669.  To find prejudice, the petitioner must show that there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted).  An ineffective assistance claim

7

is defeated if the defendant fails to demonstrate either prong.

As the Government notes, this Court need not "address both components of the [*Strickland*] inquiry if the defendant makes an insufficient showing on one."  Govt. Opp'n, ECF No. 86, at 15 (citing *Strickland*, 466 U.S. at 697).  And,"[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . that course should be followed."  *Id.*[3]

III. ANALYSIS OF CLAIMS

A. Defendant Claims Ineffective Assistance of Plea Counsel

Defendant argues that plea counsel was ineffective by failing to investigate and obtain dashcam footage, which Defendant argues would have been material and exculpatory evidence. *See* Def.'s Supp., ECF No. 84-1, at 3.  In this case, on direct appeal, Defendant raised an ineffective assistance of counsel ("IAC") claim related to his counsel's alleged failure to raise at least two suppression claims under the Fourth Amendment.  *United States v. Magruder*, 126 F. 4th 671, 677 (D.C. Cir. 2025).  First, Defendant argued that counsel's failure to move to suppress the backpack search constituted ineffective assistance.  This argument was based on Defendant's belief that the FBI agents did not intend to arrest him until after they discovered heroin in his backpack and therefore, they did not conduct a proper search incident to arrest nor was there probable cause before the search to believe that Defendant possessed over a kilogram of heroin with the intent to distribute it.  *Id.* at 677-678.  Second,  Defendant argued that counsel was ineffective for failing to challenge both the Louisiana magistrate judge's jurisdiction to issue a warrant under the Stored

_____

[3] Although Defendant fails to satisfy either prong of the *Strickland* standard, the Court will address both prongs in this Opinion because Defendant is proceeding *pro se* and because Defendant has a history of filing a multitude of motions asking for the same relief, even after relief has been denied.

8

Communications Act, 18 U.S.C. § 2703, as well as the venue status in that district.  Defendant

asserted that "because the FBI identified him only using the fruits of this allegedly invalid warrant,

if his counsel had made the challenge and presumably succeeded, the proper remedy would have

been suppression of the evidence."  *Id.* at 679.  The D.C. Circuit found that neither of Defendant's

Fourth Amendment claims – which Defendant alleged should have been raised by counsel – would

have been successful nor did those claims satisfy the prejudice requirement in *Strickland*.  *Id.* at

677-680.

1.  The Government Asserts that Defendant's IAC Claim is Procedurally Barred[4]

The Government argues that because Defendant "already unsuccessfully raised an

ineffective assistance-of-plea-counsel claim on direct appeal," he is therefore "procedurally barred

from raising the same claim (albeit with some factual modifications) on collateral attack."  Govt.

Opp'n, ECF No 86, at 11.  The Government acknowledges however that the "D.C. Circuit has yet

to squarely resolve the question of whether a defendant who raises an ineffective-assistance-of-

counsel claim on direct appeal is procedurally barred from subsequently raising such a claim in a

§ 2255 motion."  Govt. Opp'n, ECF No 86, at 11; *see United States v. Glover*, 760 Fed. App'x. 4,

6 n.1 (D.C. Cir. 2019) (observing, but not taking a position on, the circuit split on this issue).  Still,

---

[4] A limited exception to procedural default based on actual innocence exists for a "narrow class
of . . . extraordinary instances [in which] a constitutional violation probably caused the
conviction of one innocent of the crime."  *McCleskey*, 499 U.S. at 494.  To demonstrate actual
innocence, one must establish "factual innocence, not mere legal insufficiency."  *Bousley*. 523
U.S. at 623. Evidence that the defendant is actually innocent must be "so strong that a court
cannot have confidence in the outcome" of the case.  *Schlup v. Delo*, 513 U.S. 298, 316 (1996).
"Because such evidence is obviously unavailable in the vast majority of case, claims of actual
innocence are rarely successful."  *Id.* at 324.

Defendant does not assert "actual innocence" and accordingly, this exception was not addressed
by the Government nor need it be discussed by this Court.

the Government argues that this Court should "employ the general rule and find that defendant's duplicative claim is procedurally barred."  Govt. Opp'n, ECF No. 86, at 12 (citation omitted).

Because the D.C. Circuit has not ruled on whether an IAC claim may be raised in a § 2255 motion, and because the Government <u>has</u> addressed in detail the merits of Defendant's IAC claim, this Court will resolve this issue via a *Strickland* analysis.

2.  Defendant's IAC Claim Fails under *Strickland*

Under the standard set forth in *Strickland*,  to succeed on an IAC claim, Defendant must establish that his counsel's performance was constitutionally deficient <u>and</u> that he suffered prejudice from that deficient performance.  The burden rests on Defendant to demonstrate both elements, *Weaver v. Massachusetts*,  582 U.S. 286, 299-300 (2017), and failure to make the required showing on either defeats an ineffectiveness claim.  *Strickland*, 466 U.S. at 700.  As noted previously herein, this is a "highly demanding" standard,  *Kimmelman*, 477 U.S. at 382, and "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

a.  Defendant's Plea Counsel was Not Deficient.

To satisfy the deficiency requirement, Defendant must establish that his trial counsel "made errors so serious that [they were] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The relevant question is whether "no competent" counsel would have done what Defendant's counsel did.  *Premo v. Moore*, 562 U.S. 115, 124 (2011) (citations omitted).  Defendant must prove that his counsel's representations "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

The Government notes that "it is well-established that defense counsel has a duty to

communicate formal plea offers containing terms and conditions that may be favorable to a defendant." Govt. Opp'n, ECF No. 86, at 14 (citing *Missouri v. Frye* , 566 U.S. 134, 145 (2012)). "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo*, 562 U.S. at 124. Defense counsel's advice regarding the plea must also be objectively reasonable. *See, e.g., Lafler v. Cooper*, 566 U.S. 156 (2012) (finding that counsel was deficient for advising a defendant to reject a remarkably lenient plea offer, based on counsel's misunderstanding of the law); *United States v. Rashad*, 331 F.3d 908 (D.C. Cir. 2003) (acknowledging that trial counsel can be deficient for mischaracterizing the strength of the government's evidence and understating the severity of the sentence a defendant would face at trial) (two cases cited by the Government, in its Opposition, ECF No. 86, at 14-15). Courts must however "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. And, "[j]udicial scrutiny of counsel's performance must be highly deferential" as it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689.

In this case, Defendant proffers that his counsel failed to adequately investigate the case, by failing to obtain alleged "missing footage" from a bodycam, and that counsel misrepresented to Defendant and the Court that he had received all discovery from the Government when he had not obtained that "missing footage." Def.'s Supp., ECF No. 84-1, at 3-4. Defendant asserts that if he had seen "any MPD body cam or dashcam discovery" before counsel advised Defendant to plead guilty, he would have "immediately alerted [counsel] to the missing footage leading up to [his] arrest" and he "would not have pled guilty and would've insisted on going to trial." *Id*. at 3.

11

As a preliminary matter, the Court notes that there is no evidence before this Court of any "missing footage." The Government notes, accurately, that "[D]efendant does not provide any details or corroboration, beyond mere speculation, that dash cam or body worn camera actually exists in this case" and accordingly, there is no reason to believe that there is "missing footage" available to the Government but undisclosed to Defendant. Govt. Opp'n, ECF No. 86, at 16

Furthermore, the Government contends, and this Court agrees, that the record "refutes [D]efendant's vague and conclusory allegation of [counsel's] deficiency." Govt. Opp'n, ECF No. 86, at 16. The Government asserts that:

> First, defense counsel confirmed on the record that he had received all the discovery in this case (ECF No. 78 at 33.) Moreover, on October 8, 2019, prior to the October 25, 2019 plea hearing, defendant affirmed that he had received and reviewed the evidence against him (ECF No. 19 at 5). Further, on October 22, 2019, defendant acknowledged that every item of discovery that he or his prior counsel had requested had been provided (ECF No. 20 at 12).

Govt. Opp'n, ECF No. 86, at 16. Moreover, in its denial of Defendant's appeal, the D.C. Circuit noted that – prior to this Court's acceptance of the plea – "Magruder had at least four discussions with his counsel regarding the relevant sentencing calculations and discovery process. At the plea hearing, Magruder expressed his satisfaction with his counsel's representation and acknowledged that he waived his right to appeal any issue other than ineffective assistance of counsel." *United States v. Magruder*, 126 F.4th at 675 (internal citation omitted). Accordingly, based on the record before this Court, the parties' arguments, and controlling legal authority, the Court finds that Defendant has failed to satisfy the deficiency prong of the *Strickland* standard, which is required for an IAC claim.

b. There was No Prejudice to Defendant

In addition to establishing deficiency, Defendant must prove that he was prejudiced by his

attorney's representation.  Defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. at 52, 59 (1985).  A "reasonable probability" is defined as "a probability sufficient to undermine confidence in" the decision to plead guilty.  *Strickland*, 466 U.S. at 694.[5]  In the *Hill* case, the Supreme Court opined on this standard, as follows:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill v. Lockhart*, 474 U.S. at 59.  The Court explained also that the "predictions of the outcome at a possible trial . . . should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker.'"  *Id.* at 59-60 (quoting *Strickland*, 466 U.S. at 695).  "[T]he prejudice inquiry depends largely on whether [the defense that would have been offered at trial] might have succeeded, leading a rational defendant to insist on going to trial."  *Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2002) (discussing *Hill*).  In *Lee v. United States*, 582 U.S. 357, 366-367 (2017), the Supreme Court recognized that in assessing prejudice, "there is more to consider than simply the likelihood of success at trial," but "[a]s a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea."  *Id.*

---

[5] The Government notes, in its Opposition, ECF No. 86, at 13 n.5, that Defendant "previously raised an allegation of ineffective assistance of plea counsel," [as a  basis to withdraw his guilty plea], and the Court denied that motion, finding that Defendant had not demonstrated that he was prejudiced by any failure of his previous counsel to provide him with relevant discovery.  Mem. Op., ECF No. 34, at 8-12.

In the instant case, Defendant proffers only vague and conclusory claims that he would not have entered a plea if the alleged "dashcam discovery and suppressed footage" [exculpatory evidence] had been disclosed.  Defendant does not indicate how any alleged exculpatory evidence in the form of "missing footage" would have factored into his decision making regarding a plea, in consideration of the significant amount of heroin in the backpack that he was carrying.  Neither does Defendant proffer anything to suggest that he would have been counseled to reject a plea in favor of proceeding to trial, where, in this case, the weight of the evidence suggests that he would not have succeeded.[6] *See generally* Factual Proffer, ECF No. 12.  Nor does Defendant address the benefits he received by accepting the plea and how this may have factored into his decision to enter a plea.  *See* Plea Tr., ECF No.78, at 30-33 (discussing benefits to Defendant and noting, *inter alia*, that if Defendant accepted the plea, the Government was not going to bring any additional charges relating to Defendant's conduct). Accordingly, considering the record in this case, the parties' arguments, and controlling legal authority, this Court concludes that Defendant has not demonstrated prejudice, and Defendant's IAC claim is denied also on this basis.  The Court turns now to Defendant's second claim.

B.  Defendant Claims Withholding of *Brady* Information

Defendant asserts that the Government violated his Fifth Amendment right to Due Process by withholding exculpatory evidence before he pleaded guilty, thereby rendering his plea involuntary and unintelligent.  Def.'s Supp., ECF No. 84-1, at 1-2.  In his Plea Agreement, however, Defendant waived the right to bring this claim.  The Plea Agreement states, in

---

[6] This Court notes, again, that the D.C. Circuit opined that the search of Defendant's backpack was lawful.  *United States v. Magruder*, 126 F.4th at 677-678.

14

unambiguous language, that

> [Defendant] also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that [Defendant] received ineffective assistance of counsel. [Defendant] reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2) but agrees to waive the right to appeal the denial of such motion.

Plea Agrmt., ECF No. 13, at 9.

The Government asserts, and this Court agrees, that "[c]riminal defendants may waive constitutional and statutory rights if the waiver is knowing and voluntary." Govt. Opp'n, ECF No. 86, at 19 (string citing cases); *see, e.g., United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). This includes waivers of the right to appeal, even if it is anticipatory. *United States v. Powers*, 885 F.3d 728, 731 (D.C. Cir. 2018). The Government asserts that courts enforce waivers in plea agreements if the waivers are valid, and the scope of the waiver covers the collateral attack that a defendant seeks to advance. Govt. Opp'n, ECF No. 86, at 20; *see United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016) (noting that appeal waivers are generally enforced and appeals falling within the scope of the waiver are ordinarily dismissed); *United States v. Koonz*, No. 16-cr-16 (EGS), 2024 WL 3225980, at *5-6 (D.D.C. June 28, 2024). A collateral waiver in a plea agreement may be interpreted as an enforceable contract that will "preclude[] challenges that fall within its scope" if it is knowing and voluntary. *Garza v. Idaho*, 586 U.S. 232, 238 (2019).

The D.C. Circuit has affirmed the enforcement of appellate waivers. The rationale underlying an appeal waiver is that "the defendant *gives up* his right to have an appellate court review the merits of his arguments in exchange for valuable consideration." *Khadr v. United States*, 67 F.4th 413, 424 (D.C. Cir. 2023) (emphasis in original), *cert. denied*, 219 L. Ed. 2d 1234.

Permitting a defendant to waive this right "improves the defendant's bargaining position and increases the probability he will reach a satisfactory plea agreement with the Government." *United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009). The same rationale is employed with collateral waivers. *See, e.g., Koontz*, 2024 WL 3225980, at *6 (citing *Guillen* and declining to issue a certificate of appealability as to claims in a Section 2255 motion barred by a collateral-attack waiver in a plea agreement).

In the instant case, the record shows that Defendant knowingly and voluntarily waived his right to collaterally challenge his convictions or sentences unless his challenge is based on ineffective assistant of counsel or "newly discovered evidence." The language of the Plea Agreement is unambiguous, the Defendant and his counsel signed the Agreement, and the Court confirmed in a colloquy at the Plea Hearing that Defendant waived his appeal rights knowingly and voluntarily. *See* Plea Tr., ECF No. 78, at 11-13.

Furthermore, Defendant's Motion fails to demonstrate that the alleged "missing footage" which is the predicate for his *Brady* claim was "newly discovered" as is required for him to evade the collateral-attack waiver to which he agreed. In this case, Defendant was present during the June 8, 2019 search, and he indicated also that

> it was only when Ms. Amato [counsel] showed me this discovery before sentencing that I noticed that the entire encounter with the agents and MPD leading up to my arrest was missing from my discovery. At that time, I asked Ms. Amato to bring it to the court['s] attention but her response was the judge was never going to delay my sentencing again due to the multiple postponements so my best option would be to bring it up on my appeal.

Def.'s Supp., ECF No. 84-1, at 3. Defendant's motion regarding the alleged *Brady* violation falls clearly within the collateral-attack waiver of his plea agreement as Defendant himself states in his Motion that he had reason to believe there was "missing footage" prior to his April 22, 2022

16

sentencing and certainly prior to his direct appeal on May 4, 2022.  Accordingly, the Court enforces Defendnat's collateral-attack waiver and declines to consider Defendant's claim under the "newly discovery" evidence exception, with the effect that Defendant's Motion regarding his alleged *Brady* violation is summarily denied on this basis.[7]

IV. CONCLUSION

This Court finds that Defendant's § 2255 motion is without merit, both regarding Defendant's claims of ineffective assistance of plea counsel and his claim of an alleged *Brady* violation.  As such, Defendant's sentence and conviction remain unchanged.  A separate Order accompanies this Memorandum Opinion.

DATED: July 28, 2026



_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

---

[7] The Government argues alternatively that even if Defendant's *Brady* claim is not precluded by the parties' collateral-attack waiver, Defendant did not raise the claim on direct appeal, and he is therefore procedurally barred from raising the claim in a subsequent collateral attack unless he shows cause for his failure to do so and prejudice.  Govt. Opp'n, ECF No. 86, at 21. In this case, Defendant proffers nothing more than that his appellate counsel did not raise the "missing footage" on appeal.  Def.'s Supp. ECF No. 84-1, at 4.  The Court notes that Defendant has not demonstrated  that the "missing footage" exists nor does Defendant address cause and prejudice, *i.e.*, whether appellate counsel's decision not to raise this issue constitutes deficient performance or whether Defendant would have prevailed on appeal had this argument been raised.